FILED

2008 Sep-17  PM 12:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **WILBURN J. TALLEY,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 5:07-CV-1490-RDP** |
| | } | |
| **MICHAEL J. ASTRUE, Commissioner** | } | |
| **of Social Security,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OF DECISION

Plaintiff Wilburn J. Talley brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3), seeking judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income benefits ("SSI") and disability insurance benefits ("DIB") under Title XVI of the Social Security Act (the "Act") . *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and the proper legal standards were applied.

### I.  Proceedings Below

Plaintiff filed his application[1] for a period of disability and DIB, and also protectively filed a Title XVI application for SSI on February 2, 2004 (Tr. 57), alleging that he became unable to work

---

[1]Plaintiff previously filed other applications for benefits, but they are not before this court for review.  (Tr. 96-97, 575).

on April 8, 2002.[2]  (Tr. 58).  Plaintiff's application was denied on July 16, 2004.  (Tr. 42F-J).  Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  (Tr. 43-44).  ALJ Robert L. Hodges heard Plaintiff's case on December 19, 2005, in Huntsville, Alabama.  (Tr. 45, 573-603).  In the decision dated June 20, 2006, the ALJ determined that Plaintiff was not eligible for either SSI or DIB because he failed to meet the disability requirements of the Act.  (Tr. 24).  After the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 7-9), that decision became the final decision of the Commissioner and therefore a proper subject of this court's review.

At the time of the hearing, Plaintiff was thirty-eight years old and possessed a twelfth grade education attending special education classes.  (Tr. 23, 109, 577).  Plaintiff previously was employed as a mover, janitor, loading pallets, and at a dairy farm.  (Tr. 113, 147-55, 163-68, 580-86).  Plaintiff alleges he suffers from a learning disability, heart problems, allergies, and a mental condition.  (Tr. 104-05).  According to Plaintiff, these problems have rendered him unable to engage in substantial gainful activity since his alleged onset date of disability.  (Tr. 58).

According to medical evidence in the record, Plaintiff had a psychological report completed by Dr. Jon G. Rogers, a clinical psychologist, on August 23, 1995.  (Tr. 521).  He observed that Plaintiff, on the Wechsler Adult Intelligence Scale test ("WAIS"), obtained a language development score of 77, a visual motor integration-syntheses score of 80, and a full scale intelligence score of 76.  (*Id*.).  Dr. Rogers concluded that Plaintiff had borderline intellectual functioning.  (Tr. 523).

---

[2]Plaintiff's alleged onset date of disability was amended to December 19, 2002 by court order dated December 19, 2005.  (Tr. 64).

Plaintiff was administered the Wechsler Intelligence Scale Test for Children ("WISC") at school on March 8, 1984. (Tr. 403). Plaintiff obtained a verbal scale IQ score of 79, a performance scale IQ score of 75, and a full scale IQ score of 76. (*Id.*). These scores indicate Plaintiff was functioning within the borderline range of intelligence. (Tr. 409).

Dr. Iqbal Saeed performed a consultative examination of Plaintiff on September 25, 2002. (Tr. 226). Upon examination, Plaintiff's blood pressure was 132/77 and visual acuity was 20/50 in the right eye, 20/30 in the left eye, and 20/40 in both eyes. (*Id.*). Plaintiff had normal breath sounds and his range of motion was within normal limits in all joints. (Tr. 227). Dr. Saeed determined that Plaintiff had shortness of breath in certain environments, mitral valve prolapse, and a low IQ. (*Id.*). He opined that Plaintiff was able to perform related activities such as sitting, standing, and handling objects. (*Id.*). He also noted that if Plaintiff experienced shortness of breath, he may not be able to work in those places and may need to avoid those environments. (*Id.*).

Dr. Rogers performed a consultative psychological evaluation on June 8, 2004. (Tr. 236). He noted that Plaintiff's affect was broad, his mood was normal, and his orientation to time, place, and person was good. (Tr. 238). He also noted Plaintiff's judgment and insight were poor. (Tr. 239). Dr. Rogers's diagnostic impression of Plaintiff was depressive disorder, and noted that Plaintiff's prognosis would improve with mental health services. (*Id.*). He also noted that Plaintiff's ability to understand, remember, and carry out instructions and respond appropriately to supervision, co-workers, and work pressures in a work setting was moderately impaired. (Tr. 241).

Dr. Younus Ismail examined Plaintiff on June 9, 2004. (Tr. 242). Dr. Ismail noted that Plaintiff had good bilateral air entry in all lung fields with a vesicular pattern of breathing. (Tr. 243). Although Plaintiff had some pain on the movement of the ankle, there was no obvious deformity or

3

limitation.  (*Id.*).  Dorsi, flexion, plantar flexion, inversion and eversion of both ankles' joints were within normal limits.  (*Id.*).  Plaintiff had normal gait and was able to walk without any assisting device.  (Tr. 244).  The diagnosis was left ankle pain and swelling, bronchial asthma, and sinus allergies.  (*Id.*).  Dr. Ismail noted that Plaintiff had a normal physical examination.  (*Id.*).

Claimant was treated at Scottsboro Quick Care Clinic on September 27, 2005, for allergic rhinitis, mitral valve prolapse, arthritis, and ankle pain.  (Tr. 284).  Plaintiff was given Nasacort for his allergic rhinitis, Forinef for mitral valve prolapse, and Relafen for arthritis and ankle pain.  (*Id.*).

Dr. Rogers performed another consultative evaluation of Plaintiff on January 31, 2006.  (Tr. 288).  Plaintiff complained that his mental problems affected his ability to work.  (*Id.*).  Dr. Rogers observed that Plaintiff's mood appeared normal and Plaintiff reported that he felt "sometimes pretty good."  (Tr. 290).  Orientation to time, place, and person was good.  (*Id.*).  Stream of talk and mental activity were normal.  (*Id.*).  The WAIS was administered to Plaintiff and he obtained a verbal scale IQ score of 84, a performance scale IQ score of 68, and a full scale IQ score of 75.  (Tr. 291).  The diagnostic impression was depressive disorder and borderline intellectual functioning.  (Tr. 292).

On January 31, 2006, Dr. Rogers completed a Mental Medical Source Opinion of Plaintiff.  (Tr. 295-96).  He opined that Plaintiff had moderate functional limitations in his ability to respond appropriately to supervisors and co-workers; deal with changes in a routine work setting and in his ability to use judgment in simple one or two step work-related decisions; as well as understand, remember, and carry out simple, one and two step instructions.  (*Id.*).  Dr. Rogers further opined that Plaintiff had a marked functional limitation in his ability to respond appropriately to members of the general public; use judgment in detailed or complex work-related decisions; maintain social functioning, in his ability to understand, remember, and carry out detailed or complex instructions;

and in his ability to maintain attention, concentration and pace for periods of at least two hours. (*Id.*). Lastly, he found Plaintiff had a mild functional limitation in his ability to maintain activities of daily living. (*Id.*).

## II. ALJ Decision

Determination of disability under the Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity ("RFC") can meet the physical and mental demands of past work. The claimant's RFC is what the claimant can do despite his impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making this final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and RFC are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will not review the claim any further.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that he can no longer perform his former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that he can no longer perform his past employment, "the burden

then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff has not engaged in substantial gainful activity at any time relevant to the ALJ's decision. (Tr. 18, Finding 2). The ALJ further found Plaintiff meets the disability insured status requirements of the Act through June 30, 2009. (Tr. 18, Finding 1). Based on the medical evidence presented, the ALJ concluded that Plaintiff has the following "severe" impairments: mitral valve prolapse, asthma, osteoarthritis of the left ankle, depressive disorder, and borderline intellectual functioning. (Tr. 18, Finding 3). However, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 20, Finding 4)

After considering all the medical evidence, the ALJ found that Plaintiff is unable to perform any past relevant work, but retains the RFC to perform work at the light exertional level with moderate or less pain for an eight hour workday. (Tr. 21, Findings 5, 6). The ALJ determined Plaintiff can lift and carry ten pounds frequently and twenty pounds occasionally. (Tr. 21, Finding 5). The ALJ also determined that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. (Tr. 23, Finding 10). Thus, the ALJ ruled that Plaintiff is not disabled as the Act defines that term, and that Plaintiff, therefore, is not entitled to a period of benefits. (Tr. 15). *See* 20 C.F.R. §404.1520(b).

### III. Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative,

remanded for further consideration. (Doc. #9, at 8). Plaintiff asserts the ALJ erred in failing to consider medical equivalence to Listing 12.05(C).

## IV.  Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

7

### V.  Discussion

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for remand and/or reversal.  For the reasons outlined below, the court finds that the ALJ relied on substantial evidence and the proper legal standards were applied.

**A.      The ALJ Did Not Err in Failing to Consider Medical Equivalence to Listing 12.05(C).**

Plaintiff argues that the ALJ erred by failing to consider his medical conditions in light of Listing 12.05(C) or as a possible medical equivalent to Listing 12.05(C).  Plaintiff contends that either: (1) his medical records establish that he has met the requirements of Listing 12.05(C) and should have therefore been found "disabled," or (2) his medical records establish that his condition qualifies as equivalent to the requirements of Listing 12.05(C) and therefore, pursuant to 20 C.F.R. 404.1526, he should have therefore been found "disabled."  Plaintiff cites various instances in the record in which Plaintiff was found to have an IQ between 60 and 70.  Plaintiff also notes various examinations by Dr. Rogers in which Plaintiff was found to exhibit various signs of mental deficiencies.  In referencing these things, Plaintiff contends that he meets or equals the requirements of Listing 12.05(C) and should be found disabled by way of mental retardation.  More specifically, Plaintiff argues that the ALJ offered an inadequate rationale for rejecting portions of Dr. Rogers's opinion and that the ALJ should have developed the record by procuring the opinions of additional medical experts if he was unwilling to accept Dr. Rogers's medical opinions.

Listing 12.05(C) provides that a claimant should be found disabled by way of mental retardation if he exhibits "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R. Pt. 404, Subpt. P, App.

1, § 12.05(C).  Additionally, Plaintiff must show "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  *Id.*

> The Eleventh Circuit explained the listing of impairments in *Wilson v. Barnhart*:
>
>> To "meet" a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement.  To "equal" a Listing, the medical findings must be "at least equal in severity and duration to the listed findings."  If a claimant has more than one impairment, and none meets or equals a listed impairment, the Commissioner reviews the impairments' symptoms, signs, and laboratory findings to determine whether the combination is medically equal to any listed impairment.

284 F.3d 1219, 1224 (11th Cir. 2002)(internal citations omitted).  Additionally, "[f]or a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  Furthermore, "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Id.*   Regarding medical equivalence to Listing 12.05(C), the Eleventh Circuit has held that since this listing is defined in functional terms, the ALJ must consider the combined effects of impairments on functional capacity in determining whether the listing is equaled.  *Davis v. Shalala*, 985 F.2d 528, 533-34 (11th Cir. 1993).

The ALJ did not err in finding that Plaintiff did not meet or medically equal Listing 12.05(C).  First, while Plaintiff cites to Dr. Rogers's evaluation of Plaintiff as support for his argument that he meets the requirements of Listing 12.05(C), the court agrees with Defendant that the results of the WISC performed when Plaintiff was sixteen years old are the most relevant for the purpose of this determination.  The WISC revealed a verbal IQ score of 79, a performance IQ score of 75, and a full

scale IQ score of 76.   (Tr. 403, 412).   According to 20 C.F.R. Pt. 404, Subpt. P, App. 1, §

112.00D(10):

> IQ test results obtained at age 16 or older should be viewed as a valid
> indication of the child's current status, provided they are compatible
> with the child's current behavior.  IQ test results obtained between the
> ages 7 and 16 should be considered current for 4 years when the
> tested IQ is less than 40 years and for 2 years when the IQ is 40 or
> above.

As such, the court considers the WISC administered to Plaintiff when he was age 16 to be the most

accurate indication of Plaintiff's IQ for purposes of Listing 12.05(C)—a verbal scale IQ score of 79,

a performance scale IQ score of 75, and a full scale IQ score of 76.  These IQ scores were not in the

range of 60-70, and therefore do not meet the IQ requirement for Listing 12.05(C).

        In addition, given that Dr. Nicholson opined that these scores placed Plaintiff in the

borderline range of intellectual functioning, Plaintiff did not meet the requirements of Listing

12.05(C) establishing "significantly subaverage general intellectual functioning with deficits in

adaptive functioning initially manifested during the developmental period."  Furthermore, two years

later, when Plaintiff was age 18, he obtained a verbal IQ score of 85, a performance IQ score of 76,

and a full scale IQ score of 80 on the WAIS-R.  (Tr. 400).  The court concludes that this is further

indication that Plaintiff did not meet the specific Listing 12.05(C) requirements, which include

establishing an IQ in the range of 60-70 before age 22.  The court further notes that, even if the ALJ

had determined Plaintiff had obtained a valid verbal, performance, or full scale IQ of 60 through 70,

the ALJ's decision that Plaintiff failed to meet the requirements of Listing 12.05(C) would still be

valid, as there is substantial evidence in the record that Plaintiff did not have "significantly sub-

average general intellectual functioning" and "a physical or other mental impairment imposing an additional and significant work-related limitation of functioning."

A review of the record shows that Plaintiff has not only failed to meet the requirements of Listing 12.05(C), he also failed to establish medical equivalence to Listing 12.05(C). In deciding whether a claimant has the medical equivalence of a listing, the ALJ must consider the combined effects of impairments on functional capacity in determining whether the listing is equaled. *Davis*, 985 F.2d at 533-34. The ALJ explained in his opinion that "the diagnosis in exhibit B-12F and earlier was borderline intellectual functioning, not mental retardation." (Tr. 20). This, the ALJ found, along with the IQ scores, is why Plaintiff's medical conditions did not medically equal Listing 12.05(C). The court concludes that the ALJ properly considered the combined effects of impairments on functional capacity and did not err in concluding that Plaintiff's conditions did not medically equal Listing 12.05(C). There is an abundance of evidence in the record that supports the ALJ's conclusion. Dr. Leonard concluded that Plaintiff had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration persistence and pace. (Tr. 264). Dr. Rogers concluded that the extent of Plaintiff's mental impairment was "moderate" and that he should be able to perform most activities of daily living. (Tr. 240). Dr. Rogers also assigned Plaintiff a GAF of 55, suggesting no more than moderate limitations of function. (Tr. 239). Thus, the ALJ relied upon substantial evidence in concluding Plaintiff's "moderate" ailments did not medically equal Listing 12.05(C)'s requirements of "significant" impairments.

## VI. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this _____17th_____ day of September, 2008.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

12